# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### March 9, 2004 Session

## STATE OF TENNESSEE v. JONATHAN ABERNATHY, JR.

**Appeal from the Circuit Court for Giles County**
**No. 10552     Jim T. Hamilton, Judge**

—————

**No. M2003-01452-CCA-R3-CD - Filed April 21, 2004**

—————

The Defendant, Jonathan Abernathy, Jr., was convicted by a jury of tampering with evidence.[1]  In this appeal, the Defendant argues that the trial court erred by not suppressing testimony of police officers regarding the actions they witnessed the Defendant take during their search of his residence. He contends that the search was illegal because the search warrant that the officers executed at his residence was invalid; therefore, the officers should have been precluded from testifying as to what they witnessed while they were at the Defendant's residence.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA McGEE OGLE, JJ., joined.

Stanley K. Pierchoski, Lawrenceburg, Tennessee, for the appellant, Jonathan Abernathy, Jr.

Paul G. Summers, Attorney General and Reporter; Richard Dunavant, Assistant Attorney General; and Mike Bottoms, District Attorney General, for the appellee, State of Tennessee.

## OPINION

On March 1, 2002, a search warrant was issued in Giles County authorizing the search of the mobile home at 551 Cherry Street in Pulaski, the Defendant's residence. The issuance of the warrant was based on information received by Officer L.C. Gill of the Pulaski Police Department from an informant that the Defendant was selling cocaine from the residence. That same day, police officers executed the search warrant at the Defendant's house. At the time the warrant was executed, the Defendant was at home with his brother, his son, and his uncle. Officer Gill secured the individuals in the kitchen of the residence, then brought in a dog trained to detect illegal drugs. The dog alerted

—————

[1]See Tenn. Code Ann. § 39-16-503.

the officers to a general location, and the officers began to search for drugs. The Defendant was being disruptive, so the officers placed him in a back bedroom. On the bedroom floor, Officer Gill found a small rock-like substance, which a forensic chemist with the Tennessee Bureau of Investigation determined to contain cocaine.

Subsequently, one of the officers who was searching the bathroom yelled for Officer Gill. The officer was looking in the commode, and Officer Gill saw that there was a plastic bag wrapped in toilet paper in the commode. Joey Turner, the officer who discovered the bag, testified that the bag appeared to contain crack cocaine. The Defendant said, "[T]hat ain't no dope." Then the Defendant lunged between the officers, reached into the toilet bowl, grabbed the bag wrapped in toilet paper, and "put it in his mouth."[2] The officers began to struggle with the Defendant, and he began choking. Blood was coming from his mouth and nose. During the struggle, the Defendant kicked the bathroom door, which hit Officer Brandon Beard in the head, causing it to bleed. Though the officers had placed the Defendant in handcuffs, they took off the restraints because he was "going limp" and appeared to be having trouble getting air. When they took off the handcuffs and put the Defendant on the floor, he "jumped up, dove for the commode, and he put his head in the commode and flushed it about the same time." Although the officers tried to get the plastic bag, by this time the Defendant had spit it into the toilet and flushed it and it was too late. The officers called the sewer system to have the lines flushed, but the bag was never found. Based on this evidence, the Defendant was indicted for possession of cocaine, tampering with evidence, and assault. After a jury trial, he was acquitted on the possession of cocaine and assault charges, but was convicted of tampering with evidence.

The sole issue in this direct appeal is whether the trial court erred by not suppressing the officers' testimony regarding the Defendant attempting to swallow and finally flushing the bag down the toilet. The Defendant argues that the court did so err because the affidavit supporting the search warrant was inadequate to support a finding of probable cause; therefore, the officers' testimony constituted the fruit of an unlawful search.

An affidavit has historically been viewed as an indispensable prerequisite to the issuance of a search warrant in Tennessee. See Tenn. Code Ann. § 40-6-103. The affidavit must set forth on its face facts which establish probable cause before a search warrant may issue. See id. § 40-6-104; Tenn. R. Crim. P. 41(c). Probable cause to support the issuance of the warrant must appear in the affidavit, and judicial review of the existence of probable cause will not include looking to other evidence provided to or known by the issuing magistrate or possessed by the affiant. See State v. Moon, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). Also, essential to the process of obtaining a search warrant is the requirement that the affidavit recite sufficient underlying facts and circumstances to enable the issuing magistrate to "perform his detached function and not serve merely as a rubber stamp for the police." United States v. Ventresca, 380 U.S. 102, 109, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965).

---

[2]Unfortunately for the Defendant, the water in the toilet was "discolored" by urine.

In State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989), the Tennessee Supreme Court rejected the totality of the circumstances approach adopted by the Supreme Court of the United States in Illinois v. Gates, 462 U.S. 213 (1983), for determining probable cause in affidavits based on informant allegations. Our supreme court held that, under the Tennessee Constitution, probable cause would be determined by the Aguilar-Spinelli two-pronged test. See Jacumin, 778 S.W.2d at 436. That test requires the establishment of the basis of knowledge and the veracity of the informant supplying hearsay information. See id. at 432. The basis of knowledge prong requires that the affidavit contain facts from which the magistrate may determine that the informant had a basis for the claim regarding criminal conduct or contraband. See id.; see also Moon, 841 S.W.2d at 338. The veracity prong requires that the affidavit contain facts from which the magistrate may determine either the inherent credibility of the informant or the reliability of the information provided. See Jacumin, 778 S.W.2d at 432; see also Moon, 841 S.W.2d at 338.

While our supreme court cautioned against "hypertechnical" applications of the two-pronged test, this test is the standard by which probable cause will be measured to determine whether the issuance of a search warrant is proper under Article I, Section 7 of the Tennessee Constitution. Jacumin, 778 S.W.2d at 436.

We conclude that the affidavit upon which the judge relied in issuing the search warrant was not defective. After stating that he believed the Defendant possessed cocaine and other contraband at his residence, Officer Gill averred that

> his reasons for such belief are that within the last seventy-two hours an individual who is working with the affiant has been at [the Defendant's residence] and seen crack cocaine being stored and sold. On this occasion the informant was present when [the Defendant] went inside the residence and retrieved several rocks of crack cocaine and sold them to an unidentified individual.
> The informant is familiar with the sale and packaging of crack cocaine. The informant has provided information in the past which has lead to the seizure of money associated with the sale of illegal narcotics, the seizure of illegal narcotics and the arrest of more than seven individuals that were involved in the sale of illegal narcotics.

After explaining in the affidavit that the Defendant had a reputation for and had been previously arrested and indicted for selling illegal drugs, Officer Gill stated that he believed the information provided by the informant "to be true and correct."

The affidavit satisfies both prongs of the Aguilar-Spinelli test. With respect to the basis of knowledge prong, the affidavit alleges that the informant has seen crack cocaine being stored and sold at the residence. The affidavit further states that the informant witnessed the Defendant go inside his house and emerge with crack cocaine, which he then sold. This sufficiently demonstrates the basis of the informant's knowledge of the Defendant's criminal activity. With respect to the veracity prong, the affidavit states that, in the past, the informant's information has led to the seizure

of illegal drugs and drug money and the arrest of seven people who were involved in the sale of illegal drugs. Officer Gill also states in the affidavit that he believed the information to be true and correct. This sufficiently demonstrates the credibility of the information given by the informant. Therefore, both prongs of the Aguilar-Spinelli test have been satisfied, and the affidavit supports a finding of probable cause for the issuance of the search warrant. The trial court did not err by denying the Defendant's motion to suppress the testimony of the officers based upon an illegal search.

Furthermore, even if the affidavit did not support a finding of probable cause, the trial court did not err by allowing the officers to testify as to the actions they witnessed the Defendant take regarding the bag in the toilet. This Court has previously held that evidence of a defendant's "criminal conduct committed subsequent to an illegal arrest, or even as a result thereof, should not be suppressible under the exclusionary rule." State v. Jerry Wayne Elliott, No. W1999-00361-CCA-R3-CD, 2001 WL 13233, at *2 (Tenn. Crim. App., Jackson, Jan. 5, 2001). The court in Elliott cited United States v. Sprinkle, 106 F. 3d 613 (4th Cir. 1997), in which the Court of Appeals held that evidence of new criminal acts committed subsequent to an illegal stop and seizure constitutes an exception to the "fruit of the poisonous tree" doctrine. See id. at 619. "There is a strong policy reason for holding that a new and distinct crime, even if triggered by an illegal stop, is a sufficient intervening event to provide independent grounds for arrest." Id. (citing United States v. Bailey, 691 F. 2d 1009, 1017 (11th Cir. 1982)). "A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." Bailey, 691 F. 2d at 1017. In State v. Robert Lee Mallard, No. M2000-00351-CCA-R3-CD, 2001 WL 178461, at *4 (Tenn. Crim. App., Nashville, Feb. 23, 2001), this Court held that even if the seizure of the defendant was unconstitutional, the police had probable cause to arrest him for tampering with evidence when he raised his closed hand to his mouth in an attempt to swallow something after an officer told him to stop. The court reasoned:

> An illegal stop, arrest or seizure does not justify the total exclusion of whatever takes place after the illegal stop, seizure or arrest. This conclusion is especially true when applied to crimes committed subsequent to the illegal stop, seizure, or arrest. Such evidence is not obtained as a direct result of exploitation of a constitutionally infirm stop, arrest, or seizure. For instance, if an officer makes an illegal stop of a motor vehicle, and the driver of that vehicle subsequently gets out of his or her car and assaults the officer, prosecution for the assault, and any evidence seized as a result of an arrest for the assault, should not be suppressible even though there was an illegal stop of a vehicle.

Id.

We find the reasoning in these cases persuasive. Here, even if the search of the Defendant's residence was illegal, his destruction of evidence was a sufficient intervening event to remove any "taint" of the illegal search. The police officers were justified in arresting him for this crime, and the trial court did not err by allowing the officers to testify as to the Defendant's illegal conduct.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE