IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 12, 2016

**STATE OF TENNESSEE v. ALEXANDER K. CARNEY**

**Appeal from the Circuit Court for Madison County**
**No. 14-620      Donald H. Allen, Judge**

---

**No. W2015-01265-CCA-R3-CD – Filed April 29, 2016**

---

The defendant, Alexander K. Carney, pled guilty in the Madison County Circuit Court to possession of less than .5 grams of cocaine with the intent to sell or deliver, a Class C felony; possession of marijuana, a Class A misdemeanor; resisting arrest, a Class B misdemeanor; and possession of drug paraphernalia, a Class A misdemeanor, for which he received an effective sentence of five years in the Department of Correction, to be served consecutively to his sentence for a conviction in a separate case. As a condition of his guilty plea, the defendant attempted to reserve a certified question of law regarding the legality of the traffic stop that led to the discovery of the drugs. Because we agree with the State that the certified question of law is not dispositive of the case, we dismiss the appeal for lack of jurisdiction.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., J., joined. THOMAS T. WOODALL, P.J., filed a dissenting opinion.

George Morton Googe, District Public Defender; and Gregory D. Gookin, Assistant Public Defender, for the appellant, Alexander K. Carney.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

Shortly after 3:00 a.m. on April 20, 2014, Trooper Adam Cash of the Tennessee Highway Patrol stopped the defendant for a violation of the seatbelt law. As he was

talking to the defendant at the driver's door of the defendant's pickup truck, he noticed a smell of marijuana emanating from the vehicle and observed a prescription pill bottle on the passenger side floorboard. When the defendant picked up the bottle, Trooper Cash saw that it appeared to contain a white, rock-like substance. He asked the defendant to give him the bottle, but the defendant ignored his request and suddenly reached under his driver's seat. At that point, a Madison County Sheriff's Department deputy, who had arrived on the scene and was standing beside the defendant's open passenger door, jumped into the vehicle and pushed the defendant out his driver's door onto the ground. During the defendant's ensuing struggle with the two officers, he threw the pill bottle underneath his truck, where Trooper Cash later recovered it. The bottle contained 1.33 grams of cocaine, and the officers found 1.47 grams of marijuana and marijuana rolling papers inside the vehicle. The defendant was subsequently indicted by the Madison County Grand Jury for possession of .5 or more grams of cocaine with the intent to sell and with the intent to deliver, both Class B felonies; tampering with evidence, a Class C felony; possession of marijuana and possession of drug paraphernalia, both Class A misdemeanors; resisting arrest, a Class B misdemeanor; and violation of the financial responsibility law and violation of the seatbelt law, both Class C misdemeanors.

At the April 6, 2015 suppression hearing, Trooper Cash testified that at approximately 2:55 a.m. on April 20, 2014, he observed the defendant driving in a small pickup truck at a "very low rate of speed," which he estimated to be about ten miles per hour, on a frontage road toward Old Hickory Boulevard in Jackson. He said he pulled up beside the defendant, observed that he was not wearing a seatbelt, and initiated a traffic stop by activating his blue lights as the defendant was pulling into a service station. The defendant stopped his vehicle and immediately opened his driver's side door. He approached the defendant, who "was acting . . . real nervous and was digging around in the door and stuff," told him why he had stopped him, and asked for his driver's license, registration, and insurance. As he was talking to the defendant, he noticed a "filled bottle" on the passenger side floorboard and detected an odor of marijuana emanating from the vehicle.

Trooper Cash testified that less than thirty seconds into the stop, Deputy Adam Brown of the Madison County Sheriff's Department arrived on the scene. He said he had started back to his patrol car to run the defendant's license when Deputy Brown, who was standing on the passenger side of the defendant's pickup truck, pointed in the defendant's vehicle. When he stepped back toward the vehicle and looked inside, he saw that the defendant was holding the pill bottle that had been on the passenger side floorboard. He was also able to see that it was a prescription bottle with the label removed and that it contained a "white rock-like substance . . . that was wrapped in plastic."

2

Trooper Cash testified that when he told the defendant to give him the bottle, the defendant covered it with a piece of paper and replied, "What bottle?" As he was repeating the command "multiple times," the defendant "suddenly . . . reached under the driver's seat with both hands," which he perceived as a threat. Deputy Brown reacted by pushing the defendant out of the vehicle onto the ground, where Trooper Cash attempted to subdue him. The defendant, however, who was still holding on to the bottle, resisted and attempted to pull away. Trooper Cash testified that he repeatedly told the defendant to stop resisting, but the defendant kept struggling and reaching up underneath his vehicle. To Trooper Cash, it appeared as if the defendant was trying to conceal the bottle in the exhaust pipe of his pickup truck. As the struggle continued, the defendant finally dropped the bottle, and, after an additional brief struggle, Trooper Cash and Deputy Brown succeeded in placing the defendant in custody.

Trooper Cash testified that he recovered the pill bottle, which appeared to contain cocaine, from underneath the defendant's truck. During his search of the vehicle, he found marijuana concealed in a sunglass case in the passenger side area, and the vehicle was subsequently seized.

On cross-examination, Trooper Cash acknowledged that the speed limit on the frontage road was thirty miles per hour, that the defendant was approaching a stop sign, and that there was not, to his knowledge, a minimum speed required for travel on the road. He testified that he could see "both straps [of the defendant's vehicle's seatbelt] "hanging parallel with the doorframe" and thus could see that the defendant was not wearing his seatbelt, before he activated his blue lights to initiate the traffic stop. He acknowledged he never actually pulled up level with the defendant's vehicle, and everything he saw was from his position behind the vehicle.

At the defendant's request, the dashboard videotape of the traffic stop was admitted into evidence and reviewed by the trial court before the court issued its April 13, 2015 oral ruling overruling the motion to suppress. In its ruling, the court found that it was "kind of hard to distinguish" the seatbelt violation from the beginning of the videotape, but that the defendant's seatbelt was obviously unbuckled when he was stopped in the parking lot of the service station/convenience store and the defendant did not appear to have made any motions to unbuckle the seatbelt. The court also accredited the testimony of the officer that he was close enough behind the defendant's vehicle to see that his seatbelt was unbuckled while the vehicle was in motion. The court's ruling states in pertinent part:

> I believe [the defendant] indicated on the video tape that he had already unbuckled his seatbelt when he pulled onto the parking lot, but it's

3

not depicted in the video. It doesn't appear that he unbuckled a seatbelt at all.

What it appears to the Court was that he had driven off of Old Hickory into the parking lot and did not have his seatbelt on. So, certainly, based upon what I observed, and I credit the officer's testimony, I credit what's on the video tape; it does appear that . . . [the defendant] was in fact not wearing his safety belt, which was probable cause for the officer to pull him over, to stop the vehicle, and to further investigate.

On June 8, 2015, the defendant pled guilty to possession of less than .5 grams of cocaine with the intent to sell or deliver, a Class C felony; possession of marijuana, a Class A misdemeanor; possession of drug paraphernalia, a Class A misdemeanor; and resisting arrest, a Class B misdemeanor. Pursuant to the terms of his plea agreement, he was sentenced to concurrent terms of five years as a Range I offender for the felony cocaine conviction, and thirty days at 75% for each of the three misdemeanor convictions, with the sentences to be served consecutively to his sentence in a prior case. As a condition of his guilty plea, the defendant attempted to reserve the following question of law, which was referenced in the judgment forms and which the prosecutor, defense counsel, and the trial court all agreed was dispositive of the case:

Whether the trial court erred in denying the Defendant's Motion to Suppress the warrantless stop and seizure of his vehicle due to the Defendant's alleged failure to wear his seat belt, in violation of the Defendant's Fourth Amendment rights?

## ANALYSIS

Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that an appeal lies from any judgment of conviction upon a plea of guilty or nolo contendere if:

(A) [T]he defendant entered into a plea agreement under Rule 11(c) but explicitly reserved--with the consent of the state and of the court--the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:

(i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;

4

(ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;

(iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A).

Although the parties agreed that the defendant's certified question of law regarding the legality of his traffic stop for a seatbelt violation was dispositive of the case, we are not bound by that determination. See State v. Thompson, 131 S.W. 3d 923, 925 (Tenn. Crim. App. 2003), and instead "must make an independent determination that the certified question is dispositive." State v. Dailey, 235 S.W.3d 131, 135 (Tenn. 2007) (citation omitted). "An issue is dispositive when this court must either affirm the judgment or reverse and dismiss." State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984).

The State argues that the defendant's intervening criminal conduct of resisting arrest and tampering with evidence provided a separate, lawful basis for the defendant's arrest and the subsequent search of his vehicle, wholly apart from the seatbelt violation. We agree. In State v. Nelson, 275 S.W.3d 851, 861 (Tenn. Crim. App. 2008), we concluded that a defendant's having led an officer on a high-speed chase after the officer attempted to stop him for a crooked license plate provided "an independent and constitutionally valid basis" for the defendant's arrest and subsequent search, regardless of the legality of the original seizure:

On appeal, Appellant claims that the seizure of the cocaine was unlawful because it flowed from a constitutionally infirm stop. Appellant's argument fails to recognize the significance of his own volitional conduct when Officer DeLong attempted to initiate the stop. As this Court has recently reiterated, "evidence of a defendant's 'criminal conduct committed subsequent to an illegal arrest, or even as a result thereof, should not be suppressible under the exclusionary rule.'" State v. Abernathy, 159 S.W.3d 601, 604 (Tenn. Crim. App. 2004) (quoting State v. Jerry Wayne Elliott, No. W1999-00361-CCA-R3-CD, 2001 WL 13233, at *2 (Tenn.

5

Crim. App., at Jackson, Jan. 5, 2001)). Thus, even if the initial seizure of Appellant was constitutionally infirm, new criminal acts committed after the stop and seizure provided an independent and constitutionally valid basis for Appellant's arrest.

Id.; see also State v. Christopher Lawrence Milliken, No. M2004-02431-CCA-R3-CD, 2005 WL 3132449, at *4-5 (Tenn. Crim. App. Nov. 23, 2005) (concluding that defendant's certified question of law regarding the constitutionality of a noise ordinance that led to his original seizure was not dispositive of the case because "the evidence supporting the charges to which the Defendant pled guilty was not gathered as a result of the allegedly invalid stop, but as a result of the Defendant's intervening and illegal conduct [of engaging in a 'scuffle' with officers and refusing to consent to a blood alcohol test]").

Applying the same analysis to the case at bar, the defendant's criminal acts of attempting to conceal the cocaine and resisting arrest provided a separate, lawful basis for his arrest and the subsequent search of his vehicle. Accordingly, we agree that the certified question of law challenging his seizure for violation of the seatbelt law is not dispositive and, therefore, not properly before this court.

## CONCLUSION

Based on our review, we conclude that we lack jurisdiction in this appeal because the certified question of law is not dispositive of the case. Accordingly, we dismiss the appeal.

_____
ALAN E. GLENN, JUDGE

6