IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 9, 2021 Session

**STATE OF TENNESSEE v. MARTIN RILEY, III**

**Appeal from the Criminal Court for Putnam County**
**No. 2018-CR-1148 Gary McKenzie, Judge**

_____

**No. M2020-01242-CCA-R3-CD**

_____

A Putnam County jury convicted the defendant, Martin Riley, III, of felony evading arrest in a motor vehicle, a Class D felony, and the trial court imposed a twelve-year sentence. On appeal, the defendant argues the trial court erred in failing to instruct the jury on the statutory defense available under Tennessee Code Annotated section 39-16-603(b)(2). After reviewing the record and considering the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Seth B. Pinson, Cookeville, Tennessee, for the appellant, Martin Riley, III.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Senior Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

This case stems from the August 26, 2018, traffic stop of the defendant conducted by Officer Colby Fox of the Cookeville Police Department. Though the defendant complied with the initial traffic stop, he fled the scene when Officer Fox asked him to step out of his vehicle. Officer Fox, along with Sergeant Daniel Trivette, pursued the defendant until the defendant crashed. After the crash, officers took the defendant into custody and conducted a search of his vehicle, locating a syringe and a marijuana cigarette.

Subsequently, the defendant was indicted for felony evading arrest, simple possession of marijuana, and possession of drug paraphernalia. Tenn. Code Ann. §§ 39-16-603, -17-418, -17-425.

Prior to trial, the defendant filed a motion to suppress the evidence obtained as a result of the traffic stop and subsequent search of his vehicle, including the syringe, marijuana, and the statements he made while in custody. The trial court conducted an evidentiary hearing during which Officer Fox testified.

While on patrol around 12:07 a.m. on August 26, 2018, Officer Fox saw the defendant drive past him in a silver Pontiac. Officer Fox noticed "a crack in the passenger side taillight" of the defendant's vehicle and began following him. While behind the defendant, Officer Fox again observed damage to the taillight, describing the damage as a hole no "bigger than a golf ball" with white light shining through the hole. As a result, Officer Fox activated his emergency lights and initiated a traffic stop.

The defendant complied with the stop, Officer Fox approached the vehicle, and Sergeant Daniel Trivette of the Cookeville Police Department arrived on the scene to assist. Officer Fox observed a female in the passenger seat and obtained the defendant's driver's license. He returned to his patrol vehicle, contacted dispatch, and learned the defendant had an outstanding parole violation. Upon learning of the violation, Officer Fox returned to the defendant's vehicle and asked him to step out. The defendant, however, did not comply. Instead, the defendant "stomped the accelerator and slammed the vehicle into Drive and took off." Both Officer Fox and Sergeant Trivette returned to their respective vehicles, activated their emergency lights and sirens, and began pursuing the defendant.

During the pursuit, the defendant exceeded 70 miles per hour, failed to stop at multiple stop signs and stop lights, and caused another vehicle "to get over into someone's yard to avoid being struck in the rear of their vehicle." The pursuit ended after the defendant struck "a tall sidewalk with the vehicle and rolled into a grassy area." Officer Fox initially believed the defendant fled on foot but learned from other officers on the scene that the defendant was unconscious and "slumped over in his car." Officers called emergency medical personnel, and the defendant was taken to Cookeville Regional Hospital.

While still on the scene, officers asked the defendant if he had anything illegal, including syringes, in his vehicle because the officers "thought [the defendant] may have ingested some drugs." According to Officer Fox, the defendant "said he did not know if there was a syringe, but there might be." Officers searched the defendant's vehicle and found "a syringe, and in a cigarette pack, what we believed to be a marijuana joint." Officer Fox also learned that the license plate for the defendant's vehicle was improper and that

the defendant did not have proof of ownership. The defendant's vehicle was subsequently towed from the scene and subjected to an inventory search. According to Officer Fox, the items found during the initial search of the vehicle would have been found during the inventory search.

During cross-examination, Officer Fox explained that the defendant initially passed him while driving in the opposite direction. As the defendant passed, Officer Fox looked in his driver's side mirror and noticed a crack on the inside corner of the passenger's side taillight. Though he did not recall how far away the defendant was when he noticed the crack, Officer Fox stated, "you can see white light from pretty far in a side mirror." Officer Fox began following behind the defendant and again observed the damaged taillight though he did not observe any other problems with the defendant's vehicle. After the pursuit ended, several other officers arrived at the scene, but Officer Fox did not recall if he told the officers why he initially stopped the defendant. He also acknowledged that he did not check the taillight at issue after the crash.

Officer Fox's interactions with the defendant were captured by a camera mounted on the dash board of his patrol vehicle. The video at issue began a few seconds before Officer Fox activated his blue lights and continued until the defendant's vehicle stopped after the pursuit. The dash camera footage was entered into evidence and played during the hearing. A still frame photograph taken from the video footage was also entered into evidence. Officer Fox, however, stated the photograph was "blurry and distorted," and he could not see the hole in the taillight as a result. Regardless, Officer Fox circled on the photograph the area of the taillight that was damaged. The defendant presented another still frame photograph taken from other video footage, but Officer Fox was unable to identify the image. This photograph was entered into evidence for identification only.

At the conclusion of the proof, the trial court determined Officer Fox had reasonable suspicion to initiate the traffic stop because he believed the defendant was in violation of Tennessee Code Annotated section 55-9-402.[1] Ultimately, the trial court ruled the evidence found in the defendant's vehicle admissible at trial but any statements the defendant made while in custody inadmissible.

Pertinent to this appeal, the defendant filed an additional, pre-trial motion wherein he requested two jury instructions "which differ from the pattern instruction" for evading arrest while operating a motor vehicle and its statutory defense. 7 Tenn. Prac. Pattern Jury Instr. T.P.I. Crim. 27.05(b)(1), (2). The pattern instruction provides:

---

[1] This section of the code details the lighting requirements for motor vehicles in Tennessee.

Any person who commits the offense of *[fleeing from][attempting to elude]* a law enforcement officer while operating a motor vehicle is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant was operating a motor vehicle on a *[street][road][alley][highway]* in this state;

and

(2) that while the defendant was operating such vehicle the defendant received a signal from a law enforcement officer to bring the vehicle to a stop;

and

(3) that after receiving such signal, the defendant, while operating such vehicle, *[fled from][attempted to elude]* the law enforcement officer;

and

(4) that the defendant acted intentionally.

[and]

[(5) that the defendant's flight created a risk of death or injury to innocent bystanders [**only for offenses committed on or after 7/1/16: pursuing law enforcement officers**] or other third parties.]

. . . .

[It is a defense to prosecution for this offense that the attempted arrest was unlawful. If evidence is introduced supporting this defense, the state has the burden of proving beyond a reasonable doubt that the attempted arrest was lawful. If you find that the attempted arrest was unlawful, or if you have a reasonable doubt thereof, you must find the defendant not guilty.]

7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 27.05(b) (footnotes omitted).

As to the statutory defense, the defendant argued "the pattern instruction regarding the unlawful arrest defense does not mirror the elements of the offense, and the jury should be given an instruction which addresses a 'signal to stop' rather than an 'attempted arrest'" and "the jury should be given an instruction on when a 'signal to stop' is or is not unlawful." The defendant also requested the jury "be instructed that reasonable suspicion means 'having specific and particular facts which would lead a reasonable officer to suspect an individual is committing a crime or is about to commit a crime.'" The State responded with its own proposed instructions to which the defendant objected. At the outset of trial, the defendant orally requested the special jury instructions detailed in his motion. The trial court preliminarily denied the defendant's request but determined it would revisit the issue at the conclusion of the proof. The State then proceeded with its case-in-chief.

Officer Fox detailed his interactions with the defendant on August 26, 2018. While on patrol around midnight, he observed "a small crack/hole on the inside corner of the passenger side taillight" of the defendant's vehicle. As a result, Officer Fox activated his blue lights and initiated a traffic stop. The defendant complied and stopped his vehicle on the right-hand side of the road. Officer Fox approached the driver's side of the defendant's vehicle, informed the defendant as to why he stopped him, asked the defendant for his driver's license, and observed a female in the passenger seat. Officer Fox returned to his patrol vehicle and asked the dispatch unit to check for any outstanding warrants for the defendant.[2] During this time, Sergeant Trivette parked behind Officer Fox's patrol vehicle, approached the passenger's side of the defendant's vehicle, and asked the female passenger, Angela Headrick, to exit the vehicle. The defendant remained in the driver's seat. When Officer Fox returned to the vehicle and asked the defendant to step out, the defendant "floored it," "peeled out, and sped off."

Officer Fox ran to his patrol vehicle and began pursuing the defendant with his blue lights and siren activated. Sergeant Trivette also joined the pursuit. According to Officer Fox, the defendant was driving "very fast" even though the speed limit was only approximately 35 miles per hour. Officer Fox estimated he reached over 70 miles per hour but "never really gained ground on [the defendant] until the end, because I had slowed down and cleared all of the intersections to make sure no one was coming." Additionally, during the pursuit, the defendant ran a "red light at a very high rate of speed" and ran two, four-way stop signs. Officer Fox also observed a "SUV in the grass, kind of on the curb." The SUV was driven by Emily Ann Lee who also testified, stating while driving with her daughter, she looked in her rearview mirror and saw "a car coming and lots of blue lights

_____

[2]The defendant filed a motion in limine to exclude "any mention or introduction of evidence that [the] [d]efendant might be charged with, or had an active warrant for, a violation of parole at the time of the incident underlying this case." The trial court granted the motion, and as a result, the State did not introduce evidence of the defendant's outstanding parole violation during trial.

coming behind that." The car was driving faster than the posted speed limit which Ms. Lee believed to be approximately 35 or 45 miles per hour. Upon realizing she "was in the middle of a chase," Ms. Lee felt like she and her daughter were in danger and began slowing down in order to pull off of the road. In doing so, Ms. Lee hit a curb and drove "through someone's front yard before [she] stopped in their yard." The defendant and officers passed Ms. Lee within seconds of her pulling off of the road.

A mounted camera in Officer Fox's patrol vehicle captured his pursuit of the defendant. The footage was entered into evidence and played for the jury. While watching the video, Officer Fox identified Ms. Lee's vehicle pulled over on the right-hand side of the road and indicated additional vehicles driving on the opposite side of the road during the pursuit.

Officer Fox followed the defendant until the defendant struck a "very tall curb" with his vehicle, knocking "a couple" of tires off of the rims. Officer Fox did not initially see the defendant inside the vehicle, believing he had fled on foot. However, additional officers from the Cookeville Police Department arrived and informed Officer Fox that the defendant was actually "slumped over in the vehicle." When officers pulled the defendant from the vehicle, they could not feel his pulse. Officers began rendering aid and called an ambulance before searching the defendant's vehicle.

During the search, Officer Fox found "a cigarette pack that contained what we believed to be a marijuana cigarette. . . . And also a syringe." The marijuana cigarette was entered into evidence along with testimony from Tennessee Bureau of Investigation Agent Laura Cole, an expert in forensic chemistry. Agent Cole examined the cigarette and prepared a drug analysis report which indicated that the cigarette contained marijuana, a Schedule VI substance. The report was entered into evidence.

During cross-examination, Officer Fox explained that when the defendant initially drove past him, he did not observe any damage to the defendant's vehicle. However, after the defendant passed, Officer Fox looked in his side mirror to observe the rear of the defendant's vehicle, noting he always looks in his side mirror after a vehicle passes in order to "see if their tags are illuminated, or if their rear lights are not working or damaged." Upon doing so, Officer Fox immediately noticed the damaged taillight. In response to why he was able to remember specific details during trial that he was unable to recall during his testimony at the defendant's preliminary hearing, Officer Fox stated he reviewed the dash camera video footage prior to trial but not prior to the preliminary hearing. Officer Fox again noted that he saw white light coming out of the defendant's taillight and that is why he stopped the defendant.

Upon stipulation of counsel, the defendant entered into evidence a still frame photograph taken from the body camera of Officer M. Franey along with the accompanying video footage. Officer Fox stated the defendant's taillight did not appear to be damaged from the angle captured on Officer Franey's body camera but again stated the damaged taillight was on the passenger's side of the defendant's vehicle. However, Officer Fox testified that he would not be surprised if he had told Sergeant Trivette on August 26, 2018, that the driver's side taillight was damaged.

Finally, Sergeant Trivette testified, stating he responded to the initial traffic stop in order to assist Officer Fox. When he arrived, Officer Fox was speaking with the defendant and Ms. Headrick who "were showing signs of consistent nervousness, reaching around in the vehicle, very talkative and so forth." Sergeant Trivette asked the defendant and Ms. Headrick if there was "anything illegal" inside the vehicle, and they stated there "shouldn't be." The defendant also stated that he purchased the vehicle the previous day "and so the tags probably didn't match the vehicle." Based upon "some of the signs of nervousness" he observed, Sergeant Trivette asked the defendant for consent to search the vehicle and whether the defendant or Ms. Headrick "were on probation or parole." Both the defendant and Ms. Headrick consented to a search, and Sergeant Trivette asked Ms. Headrick to exit the vehicle in order for him to conduct the search while Officer Fox "work[ed] on the citations[] and [took] care of the paperwork."

When the defendant fled the scene, Sergeant Trivette ran back to his vehicle, activated his blue lights and siren, and pursued the defendant. Video footage from Sergeant Trivette's body camera was entered into evidence and played for the jury. In the video, Sergeant Trivette noted that Officer Fox mentioned a "driver's side taillight" issue when asked why he pulled the defendant over initially.

At the close of the State's proof, the defendant moved for a judgment of acquittal and again requested the trial court instruct the jury on the statutory defense provided under Tennessee Code Annotated section 39-16-603(b)(2) along with his special, related jury instructions. The trial court denied the defendant's requests, ruling the defense had not been fairly raised. Subsequently, the jury convicted the defendant for felony evading arrest while operating a motor vehicle (count 1) but acquitted him of the remaining charges, including simple possession of marijuana (count 2) and possession of drug paraphernalia (count 3). For the conviction, the trial court imposed a 12-year sentence on the defendant, a career offender.

The defendant filed a motion for a new trial, arguing, amongst other issues, that the trial court erred "in denying all of the defendant's pretrial requests for special jury instructions" and "in failing to instruct the jury on the defense created by T[ennessee]

C[ode] A[nnotated 39-16-603(b)(2)." The trial court denied the motion, and this appeal followed.[3]

## *Analysis*

On appeal, the defendant argues the trial court committed reversible error by failing to instruct the jury on the defense created by Tennessee Code Annotated section 39-16-603(b)(2) and by denying his requests for special jury instructions on the defense and on the definition of reasonable suspicion. The State asserts "the trial court properly declined to give a jury instruction on the statutory defense because it was not fairly raised by the proof," and we agree.

"It is well-settled in Tennessee that a defendant has a right to a correct and complete charge of the law so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Farner*, 66 S.W.3d 188, 204 (Tenn. 2001) (citing *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000); *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990) ). "The issue of the existence of a defense is not submitted to the jury unless it is fairly raised by the proof." Tenn. Code Ann. § 39-11-203(c). In order "to determine whether a statutory defense is fairly raised by the proof so as to require its submission to the jury, a court must, in effect, consider the evidence in the light most favorable to the defendant, including drawing all reasonable inferences flowing from that evidence." *State v. Shropshire*, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993). "The question of whether the facts in a criminal case require the jury to be instructed regarding a particular defense is a mixed question of law and fact" which is reviewed de novo, with no presumption of correctness. *State v. Hawkins*, 406 S.W.3d 121, 128 (Tenn. 2013) (citations omitted). "Errors in jury instructions are generally subject to a 'harmless error' analysis." *Id.* (citing *State v. Williams*, 977 S.W.2d 101, 104-05 (Tenn. 1998)). "However, when the jury instructions mislead the jury as to the applicable law or fail to 'fairly submit' the relevant legal issues, such as available defenses, we hold such deficiencies to be prejudicial error." *Id.* (citing *State v. Vann*, 976 S.W.2d 93, 101 (Tenn.1998)). "A trial court's refusal to grant a special instruction is error only when the general charge does not fully and fairly state the applicable law." *Id.* at 129 (citations omitted).

Tennessee Code Annotated section 39-16-603(b)(1) states: "It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." Tenn. Code Ann. § 39-16-

---

[3] The record indicates the defendant filed his notice of appeal one day late. However, in the interest of justice, this Court may waive the timely filing of the notice of appeal, and we choose to do so in this case. Tenn. R. App. P. 4.

603(b)(1) (2016). The statutory defense of Tennessee Code Annotated section 39-16-603(b)(2) provides that "[i]t is a defense to prosecution under this subsection (b) that the attempted arrest was unlawful." Tenn. Code Ann. § 39-16-603(b)(2) (2016).

The defendant's appellate arguments all relate in some manner to the validity of the initial traffic stop. According to the defendant, Officer Fox's testimony was "rife with inconsistencies and holes" and "the photographic evidence shows a taillight [] in perfectly acceptable working order." As such, the defendant asserts the trial court erred by not instructing the jury on the statutory defense created under Tennessee Code Annotated section 39-16-603(b)(2), arguing that because the initial stop was unlawful, the defense was fairly raised. The defendant's arguments, however, are misplaced because they ignore the fact that the defendant's conviction for felony evading arrest while operating a motor vehicle stems from the new and distinct crimes he committed after he fled the scene of the initial traffic stop.

The record indicates Officer Fox observed a damaged taillight on the defendant's vehicle, followed behind the defendant, activated his blue lights, and initiated a traffic stop. The defendant complied and provided his driver's license to Officer Fox. When Officer Fox learned the defendant had an outstanding parole violation, he returned to the defendant's vehicle and asked him to get out. Instead, the defendant "floored it," "peeled out," "sped off," and initiated a high-speed chase with Officer Fox and Sergeant Trivette.

The officers separately pursued the defendant in their patrol vehicles with their blue lights and sirens activated but the defendant failed to stop. During the pursuit, which was captured on video, the defendant committed numerous traffic violations, including speeding and failing to stop at a red light and stop signs. "There is a strong policy reason for holding that a new and distinct crime, even if triggered by an illegal stop, is a sufficient intervening event to provide independent grounds for arrest." *State v. Abernathy*, 159 S.W.3d 601, 604 (Tenn. Crim. App. 2004) (citing *United States v. Sprinkle*, 106 F.3d 613, 619 (4th Cir. 1997). Here, after the initial stop which the defendant complied with, the defendant refused a subsequent request to exit his vehicle and sped away from the scene. He then committed several new and distinct traffic violations after having received signals from the officers to stop. Thus, the defendant's actions during the pursuit served as sufficient intervening events which provided independent grounds for the officers' attempted arrests. *Abernathy*, 159 S.W.3d at 604. The officers' attempted arrests of the defendant were thus lawful and eliminated the availability of the statutory defense at trial. Tenn. Code Ann. § 39-16-603(b)(2). Accordingly, the trial court did not err in denying the defendant's request for an instruction on the statutory defense as it was not fairly raised by the proof.

However, even if we determined the trial court erred in failing to instruct the jury as to the statutory defense, we conclude this alleged error was harmless "because no reasonable jury would have accepted" the defendant's theory that the initial stop was unlawful, thus warranting the defense. *State v. Benson*, 600 S.W.3d 896, 907 (Tenn.), *cert. denied*, 141 S. Ct. 427 (2020) (quoting *State v. Perrier*, 536 S.W.3d 388, 404-05 (Tenn. 2017)). The record shows that after a suppression hearing, the trial court ruled the initial traffic stop was lawful based upon Officer Fox's testimony that he stopped the defendant after observing damage to the defendant's taillight. Appellate courts are bound by a trial court's findings of facts determined after a suppression hearing unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Matthew T. McGee*, No. E2011-01756-CCA-R3-CD, 2012 WL 4017776, at *2 (Tenn. Crim. App. Sept. 13, 2012). Here, nothing in the record indicates the initial stop was unlawful or preponderates against the trial court's findings of fact related to the stop. Therefore, even under the defendant's theory, the statutory defense does not apply. Rather, the record makes clear the defendant intentionally fled and attempted to elude the officers in his motor vehicle after receiving signals from the officers to bring his vehicle to a stop. Tenn. Code Ann. § 39-16-603(b)(1). The defendant is not entitled to relief.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
J. ROSS DYER, JUDGE